# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-23-00796-CR

---

**Kenneth T. Smith, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 274TH DISTRICT COURT OF HAYS COUNTY
### NO. CR-22-5046-A, THE HONORABLE R. BRUCE BOYER, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

A jury convicted Kenneth T. Smith of the offense of robbery, a second-degree felony enhanced by a prior felony conviction to a first-degree felony. *See* Tex. Penal Code §§ 12.42(b), 29.02. The jury assessed punishment at fifteen years' imprisonment, and the trial court sentenced Smith accordingly. In two issues, Smith challenges the sufficiency of the evidence to support his conviction and argues that the trial court abused its discretion by admitting extraneous-offense evidence during the guilt-innocence phase of trial. For the following reasons, we affirm the trial court's judgment of conviction

## BACKGROUND

On October 1, 2022, Smith and Eddie Martinez were involved in a physical altercation in which Smith obtained the key to Martinez's truck and then drove away in the truck without Martinez's consent. Because Martinez's phone was in the truck, Martinez went to a

nearby house to borrow a phone and called his wife, who then called 9-1-1. Using the GPS on the truck, they tracked its location to a Poco Loco convenience store (the store). Police officers responded to the store where they arrested Smith, recovered Martinez's truck, and returned it to Martinez.

A few months later, Smith was indicted for robbery. The State alleged that:

> On or about the 1st day of October, 2022, in Hays County, Texas, the Defendant, Kenneth Tramayne Smith, did then and there, while in the course of committing theft of property and with intent to obtain or maintain control of said property, intentionally, knowingly, or recklessly cause bodily injury to Eddie Martinez by punching or striking him.

See id. § 29.02(a)(1); see also id. § 29.01 (defining "[i]n the course of committing theft" and "property"). The indictment also included an enhancement paragraph for a prior felony conviction. See id. § 12.42(b).

The jury trial occurred in August 2023. The State presented evidence that Smith forcefully took Martinez's truck without Martinez's consent and that, during the commission of the theft, Smith caused bodily injury to Martinez by striking or punching him in the eye. See id. § 1.07(a)(8) (defining "bodily injury"). The State's witnesses were Martinez; his wife, who in addition to making the 9-1-1 call, followed Smith to the store and was involved in a physical altercation with Smith before the police arrived; Smith's stepfather, who witnessed the altercation between Martinez and Smith from a distance; Jack Boulton, who also was involved in a physical altercation with Smith at the store before the police arrived; and responding officers. The defense did not call witnesses but attacked Martinez's credibility based on evidence of his past and current drug use and alleged inconsistencies in his testimony, particularly about his relationship with Smith.

2

As to what happened on October 1, 2022, Martinez testified that he was sitting in the driver's seat of his truck by the dog park in his neighborhood waiting for his wife to return home when Smith "[a]ttacked" him. Smith "jumped on" him, and they "fought over the keys."[1] Smith "ended up with one key," got in the truck, and drove off without Martinez's consent to take the truck. Smith's stepfather similarly testified that on October 1, 2022, he saw Smith and "another guy," who he later identified as Martinez, "wrestling over some . . . keys for the guy's vehicle" and that Smith "just somehow got the keys" and "sped off in the guy's car."

Because Martinez's phone was in the truck, Martinez went to a nearby house to call his wife, who then called 9-1-1. Martinez's eye was swollen, and he "had a scrape on [his] face." As to his injury from the altercation with Smith, Martinez testified:

Q. Do you remember if your eye was swollen at all?

A. It was.

Q. Was that based—was that after—

A. Yeah.

Q. —the incident with Mr. Smith?

A, Well, see, I was sitting like this (indicating). So when he came in with his hands, he hit my eye (indicating).

Q. So his hands hit your eye?

A. Yeah.

---

[1] Martinez also testified that Smith had a knife and threatened Martinez with a gun. Martinez saw "a butt of something" but did not know "if it was a knife or gun." When the police officers recovered Martinez's truck at the store, they found a knife inside the truck. The State's indictment, however, did not charge Smith with the offense of aggravated robbery or allege robbery based on Smith's possession of a knife or gun during the commission of the theft of property. *See* Tex. Penal Code §§ 29.02(a)(2), .03(a)(2).

Martinez also testified about his hospitalization after being shot in the face in August 2022, around two months before the alleged robbery.[2] He testified that he had "very extensive plastic surgery on [his] whole face"; was on pain medication, fentanyl and codeine; and was released from the hospital only a few days before the incident with Smith. Martinez testified that "there's going to be pain medicine taken for the rest of [his] days" from being shot and admitted to going to "rehab for drugs"[3] before he was shot and to recent drug use. But he denied that he was under the influence of drugs at trial. As to his relationship with Smith, Martinez denied knowing Smith "a long time" or to knowing his name, but he admitted that Smith lived in the same neighborhood, that he had given Smith a ride a "few times," and that there had been phone contact between the two of them before the incident.[4]

The responding officer who spoke with Martinez at the scene shortly after the incident between Smith and Martinez testified that Martinez "clearly appeared to have been in some sort of altercation"; that he "had an abrasion underneath his eye, and it was slightly swollen"; and that "[h]is shirt was a bit stretched." The officer further testified that "one of his

---

[2] Martinez testified that he was shot in the face when someone else was trying to steal his truck.

[3] Martinez elsewhere testified that he went to rehab for a "mental disorder."

[4] When asked if he called Smith, Martinez answered that he was "not too sure." He testified that he "did Uber in Austin," and explained his contact and the phone calls between him and Smith as follows:

> I seen [Smith] in Austin a few times. And he approached me about getting a ride because he lived in the same neighborhood I did. So he would call me, and I would call him back, because I wouldn't answer the phone because he wanted a ride. That's why.

Martinez also denied that he asked Smith to buy drugs for him.

4

eyes was clearly redder than the other and slightly swollen, as if he had been in a fight or a scuffle of some kind," and that Martinez told him that the marks on his face "occurred during the assault, when he was being assaulted sitting in his truck, and then pulled out of his truck as a result." The officer took photographs of Martinez's face that were admitted as exhibits at trial.

In a hearing outside the presence of the jury, defense counsel objected to Martinez's wife testifying about Smith's altercation with her and to photographs showing that her hair had been pulled out. Defense counsel argued that the altercation was not part of the same transaction or occurrence and that evidence of it was irrelevant, inadmissible propensity evidence, and unfairly prejudicial. *See* Tex. R. Evid. 403, 404(b). The trial court sustained defense counsel's Rule 403 objection to two of the photographs, excluding those photographs, but otherwise admitted the other photographs and allowed Martinez's wife to testify about the altercation between her and Smith at the store.

Martinez's wife testified that she called 9-1-1 after receiving a call from Martinez, who told her that "someone had assaulted him and took—stole his truck." They tracked the truck's location with GPS, and she provided the truck's location at the store to the dispatcher. The wife also drove to the store and arrived before the police. Martinez's wife testified that: (i) she saw Smith putting gas into her husband's truck at the store and drove to "the front of the truck," "roll[ed] down the window," and told Smith that "the police were on the way"; (ii) Smith then walked towards her car and "was trying to pull [her] door open"; (iii) they "struggled back and forth," he got the door open and "grabbed [her] by [her] head, pulling [her] hair, trying to pull [her] out of [her] car" and she "was yelling and screaming for help"; (iv) when an individual started walking toward them, Smith "just let [her] go"; and (v) after she got back in her car and "backed up to the side of the gas station, waiting for the police to arrive," she saw Smith trying

5

to pull another person out of their car, Smith go into the store, and the police arrive and go into the store. On cross examination, Martinez's wife answered, "Yes," when asked if she felt like she had been the victim of a crime when Smith pulled her hair out.

In a hearing outside the presence of the jury on the admissibility of evidence of the altercation involving Boulton, defense counsel raised similar objections to the ones that he had raised to Martinez's wife's testimony. Defense counsel objected to Boulton's testifying about the altercation between him and Smith at the store before the police arrived and to photographs of Boulton that were taken by a responding police officer showing scrapes on his face from the altercation. Defense counsel argued that Boulton's testimony about the altercation between him and Smith and the photographs showing Boulton's injuries did not meet the criteria for extraneous-offense evidence to be admitted, that the altercation was not part of the same transaction or occurrence, that it was not relevant, and that it was "inherently prejudicial." *See id.* R. 403, 404. The trial court overruled the objections to Boulton's testimony and the photographs of his injuries and admitted the photographs.

Boulton testified that he went to the store to get a few items and, when he was sitting in the front seat of his car getting ready to leave, he "pretty much got attacked blind side by [Smith]." Smith tried to push him into the passenger seat and "tried to take [his] car." Smith was not able to get Boulton's keys, and Boulton was able to get away from him and went into the store. Smith "tried to get in" another car, but that car drove off. Then Smith came into the store and went into "the beer cave." From the altercation with Smith, Boulton had "a scrape" on the left side of his face.

The primary responding officer testified that the people in the store pointed the officers to the "walk-in beer cooler type thing." She testified that Smith walked out of the

6

cooler, saw the officers, and then walked back into the cooler and that the officers surrounded the cooler before Smith came out and was handcuffed and placed under arrest. The officer saw signs that Smith was intoxicated. EMS was called, and Smith was transported to the hospital and then to the Hays County jail. After Smith was arrested, the police returned Martinez's truck to him.

In addition to the photographs of Martinez, his wife, and Boulton, the exhibits admitted at trial included the 9-1-1 call from Martinez's wife and the body-camera footage of the primary responding officer to the store. In the 9-1-1 call, Martinez's wife tells the dispatcher that her husband called her and asked her to call 9-1-1 because a "guy" "strong armed him" and stole his truck at the dog park by their house. She remained on the phone with the dispatcher as she was driving and tracking the truck with GPS until it was at the store. The officer's body-camera footage shows Smith come out of an enclosed space with an automatic sliding glass door—the beer cooler or cave—and then go back inside. About ten minutes later, Smith extended his hands out of the enclosed space while lying on the floor. The police approached, pulled him out, and then handcuffed and arrested him.

Neither party objected to the jury charge, and the jury returned a verdict of guilty. During the punishment phase, Smith pleaded true to the enhancement paragraph in the indictment and stipulated that he had previously been convicted of a felony. *See* Tex. Penal Code § 12.42(a). The jury assessed punishment at fifteen years' imprisonment. In accordance with the jury's verdict and assessed punishment, the trial court signed the judgment of conviction. Smith filed a motion for new trial, which was overruled by operation of law. This appeal followed.

**ANALYSIS**

**Sufficiency of the Evidence**

Smith's first issue challenges the sufficiency of the evidence to support his conviction.

*Standard of Review*

In determining the sufficiency of the evidence to support a conviction, we must decide, after viewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020). We "consider all of the admitted evidence, regardless of whether it was properly admitted." *Stahmann*, 602 S.W.3d at 577. And "[c]ircumstantial evidence is as probative as direct evidence in establishing the guilt of an actor" and "alone can be sufficient to establish guilt." *Kiffe v. State*, 361 S.W.3d 104, 108 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd).

We also are mindful that "[t]he jury is the sole judge of credibility and weight to be attached to the testimony of the witnesses" and "can draw reasonable inferences from the evidence so long as each inference is supported by the evidence produced at trial." *Stahmann*, 602 S.W.3d at 577. The jury is also "free to apply common sense, knowledge, and experience gained in the ordinary affairs of life in drawing reasonable inferences from the evidence." *Eustis v. State*, 191 S.W.3d 879, 884 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). "When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of

8

the verdict and defer to that determination." *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012) (citing *Jackson*, 443 U.S. at 326).

*Robbery*

A person commits robbery if, during the commission of theft and "with intent to maintain control of the property," he "intentionally, knowingly, or recklessly causes bodily injury to another." Tex. Penal Code § 29.02(a)(1). As charged in the indictment, it was the State's burden to prove that during the commission of the theft of property, Smith caused bodily injury to Martinez "by punching or striking him." *See id.*

On appeal, Smith does not contest the evidence to prove that he committed theft as charged in the indictment. *See id.* § 31.03(a) (stating that person commits theft "if he unlawfully appropriates property with intent to deprive the owner of property"). He challenges the sufficiency of the evidence to prove that he caused "bodily injury" to Martinez during the commission of theft. "'Bodily injury' means physical pain, illness, or any impairment of physical condition." *Id.* § 1.07(a)(8). "Any physical pain, however minor, will suffice to establish bodily injury." *Garcia v. State*, 367 S.W.3d 683, 688 (Tex. Crim. App. 2012) (citing *Laster v. State*, 275 S.W.3d 512, 524 (Tex. Crim. App. 2009)).

Smith argues that Martinez "never identified any mark on his body that was caused by [Smith]"; that Martinez "never testified that he suffered any pain from contact with [Smith]"; and that Martinez did not testify that his eye's "swelling or abrasion were caused by" Smith striking him or "were the result of the previous shooting and facial reconstruction surgery." Although there was evidence that Martinez was seriously injured when he was shot in the face a few months before the incident, the jury was free to use its "common sense,

9

knowledge, and experience gained in the ordinary affairs of life" to draw a reasonable inference from the evidence that when Smith hit Martinez in the eye, he caused Martinez to suffer physical pain. *See Eustis*, 191 S.W.3d at 884; *see also Garcia*, 367 S.W.3d at 688 (explaining that "fact finder may infer that a victim actually felt or suffered physical pain because people of common intelligence understand pain and some of the natural causes of it"); *Bolton v. State*, 619 S.W.2d 166, 167 (Tex. Crim. App. 1981) (concluding that evidence of cut was sufficient to show bodily injury).

The jury could have credited Martinez's testimony that Smith hit him in the eye; the officer's testimony that shortly after the incident, Martinez had an abrasion underneath his eye and that his eye was "slightly swollen"; the officer's testimony that Martinez told him that the marks on his face "occurred during the assault, when he was being assaulted sitting in his truck, and then pulled out of his truck as a result"; and the photographs of Martinez's face after the incident showing a swollen eye. *See Crow v. State*, 500 S.W.3d 122, 129 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (concluding that jury reasonably could have inferred that appellant's punch, as shown on video recording, was sufficient to cause victim physical pain); *Arzaga v. State*, 86 S.W.3d 767, 778 (Tex. App.—El Paso 2002, no pet.) (stating that "existence of a cut, bruise, or scrape on the body is sufficient evidence of physical pain necessary to establish 'bodily injury'" within meaning of statute and concluding that photographs of swelling and abrasion on face permitted jury to draw reasonable inference that victim experienced pain from being hit in face).

Viewing the evidence and all reasonable inferences in the light most favorable to the verdict, we conclude that it was sufficient to establish that Smith caused bodily injury to

Martinez as charged in the indictment. *See Jackson*, 443 U.S. at 319; *Stahmann*, 602 S.W.3d at 577. We overrule Smith's first issue.

**Evidentiary Rulings**

In his second issue, Smith argues that the trial court abused its discretion in admitting evidence concerning the altercation at the store between Smith and Martinez's wife and the subsequent one involving Smith and Boulton. Smith argues that this evidence was inadmissible because it concerned "uncharged assaults and thus extraneous offenses," and any relevant or probative value was greatly outweighed by its prejudicial effect.

Although evidence of the altercations involving Martinez's wife and Boulton was admitted at separate hearings outside the jury's presence, we address the admissibility of the extraneous-offense evidence together because the facts of the altercations were substantively similar, and the legal analysis is the same. Although defense counsel argued that the extraneous offense against Boulton was "clearly distinguishable and far more attenuated," the trial court in admitting evidence of the altercation correctly noted that the two extraneous offenses were nearly contemporaneous, appeared to involve attempted carjackings, and were otherwise similar.

*Standard of Review and Applicable Law*

Smith's second issue concerns Texas Rules of Evidence 403 and 404(b). Rule 403 provides that a trial court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Tex. R. Evid. 403; *see also id.* R. 401 (stating test for relevant evidence). And Rule 404(b) provides that extraneous-offense evidence "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." *Id.* R. 404(b)(1). Extraneous-

11

offense evidence, however, "may be admissible for another purpose," *see id.* R. 404(b)(2), such as "proving intent and motive as well as illustrating other aspects of an 'indivisible criminal transaction,' also known as same-transaction contextual evidence," *Inthalangsy v. State*, 634 S.W.3d 749, 756 (Tex. Crim. App. 2021) (citing Tex. R. Evid. 404(b)(2)); *see also De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009) (stating that exceptions listed in Rule 404(b) "are neither mutually exclusive nor collectively exhaustive"). "Same-transaction contextual evidence 'illuminate[s] the nature of the crime alleged.'" *Inthalangsy*, 634 S.W.3d at 756 (quoting *Camacho v. State*, 864 S.W.2d 524, 532 (Tex. Crim. App. 1993)). A factfinder "is entitled to know all the facts that are 'blended or closely interwoven' with a continuous criminal episode." *Id.* (quoting *Moreno v. State*, 721 S.W.2d 295, 301 (Tex. Crim. App. 1986)).

For extraneous-offense evidence to be admissible under both Rules 403 and 404(b), it must satisfy a two-pronged test: (1) it must be "relevant to a fact of consequence in the case aside from its tendency to show action in conformity with character," and (2) its probative value must not be "substantially outweighed by unfair prejudice." *Page v. State*, 213 S.W.3d 332, 336 (Tex. Crim. App. 2006). "Whether extraneous offense evidence has relevance apart from character conformity, as required by Rule 404(b), is a question for the trial court." *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011) (quoting *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003)). "Thus, a trial court's ruling on the admissibility of extraneous offenses is reviewed under an abuse-of-discretion standard." *Id.* (citing *Prible v. State*, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005)). "As long as the trial court's ruling is within the 'zone of reasonable disagreement,' there is no abuse of discretion, and the trial court's ruling will be upheld." *Id.* "A trial court's 404(b) ruling admitting evidence is generally within this zone if

there is evidence supporting that an extraneous transaction is relevant to a material, non-propensity issue." *Id.* (citing *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001)).

We are also mindful that we must uphold a trial court's ruling to admit evidence when the trial court's decision "is reasonably supported by the record and is correct under any theory of law applicable to the case." *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005). Further, we will not reverse a trial court's erroneous admission of evidence unless the error affected the appellant's substantial rights. *See* Tex. R. App. P. 44.2(b); *Sandoval v. State*, 409 S.W.3d 259, 287 (Tex. App.—Austin 2013, no pet.) (stating that "erroneous admission of evidence is non-constitutional error" and that "[n]on-constitutional error requires reversal only if it affects the substantial rights of the accused").

> *Did the trial court abuse its discretion in admitting the complained-of evidence under Rule 404(b)?*

As to his objection to the complained-of evidence under Rule 404(b), Smith argues that he "completed his interaction with Eddie Martinez when he drove away with Mr. Martinez's truck" and that the incidents with Martinez's wife and Boulton were "uncharged assaults and thus extraneous offenses." *See* Tex. R. Evid. 404(b)(1). He also argues that "[i]t cannot be said that an attempt to take other vehicles was an attempt to maintain control of Martinez's [truck], because it is obvious [Smith] could not drive two vehicles at the same time, and taking one vehicle would require him to leave Mr. Martinez's truck at the [store]."

The evidence showed that Martinez's wife arrived at the store within a short time after the incident between Martinez and Smith and before the police arrived; that she told Smith that the police were on the way; and that Smith then tried to pull Martinez's wife and Boulton out of their cars before going into the store, where Smith was arrested by the police a short time

13

later. Based on this evidentiary timeline of events, the trial court reasonably could have determined that the evidence of the subsequent altercations at the store prior to Smith's arrest was relevant to Smith's intent and motive as to the charged offense of robbery or that it was admissible as same-transaction contextual evidence. *See id.* R. 404(b)(2); *Inthalangsy*, 634 S.W.3d at 756; *see also Devoe*, 354 S.W.3d at 470 (explaining that "if 'the extraneous offense evidence is shown to be a necessarily related circumstance of the defendant's flight, it may be admitted to the jury" because evidence of "[f]light is admissible as a circumstance from which an inference of guilt may be drawn" (quoting *Alba v. State*, 905 S.W.2d 581, 586 (Tex. Crim. App. 1995))). The evidence of the subsequent altercations at the store provided context and supported a reasonable inference that Smith, after he was informed that the police were on their way, was attempting to gain control of a different vehicle to escape from the police. *See Devoe*, 354 S.W.3d at 470.

>    *Did the trial court abuse its discretion in admitting the complained-of evidence under Rule 403?*

Smith also argues that the evidence of the subsequent altercations should have been excluded because its prejudicial effect greatly outweighed its probative value. *See* Tex. R. Evid. 403. Smith argues that the State did not need the evidence of the subsequent altercations because "[n]othing more was needed to show the misappropriation of the truck" given the testimony of Martinez and Smith's stepfather about the incident; that "[t]he evidence of altercations with [Martinez's wife] and Mr. Boulton gave little, if any, insight into the actions near the dog park"; and that the testimony of Martinez's wife and Boulton and the photographs of their injuries were "highly prejudicial on the subject of whether [Smith] caused bodily injury to Martinez."

14

We review trial court rulings on Rule 403 grounds for abuse of discretion, *Pawlak v. State*, 420 S.W.3d 807, 810 (Tex. Crim. App. 2013), affording trial courts a high level of deference regarding admissibility, *see Robisheaux v. State*, 483 S.W.3d 205, 218 (Tex. App.— Austin 2016, pet. ref'd). Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Davis v. State*, 329 S.W.3d 798, 806 (Tex. Crim. App. 2010). Trial courts have "considerable freedom in evaluating proffered evidence's probative value in relation to its prejudicial effect," and there should be "a corresponding reluctance on the part of an appellate court to reverse trial court decisions which admit or exclude evidence." *Montgomery v. State*, 810 S.W.2d 372, 378 (Tex. Crim. App. 1990).

In conducting a Rule 403 analysis, the trial court must balance the claimed probative force of the proffered evidence along with the proponent's need for the evidence against

> (1) any tendency of the evidence to suggest that the case would be decided on an improper basis; (2) any tendency of the evidence to confuse or distract the jury from the main issues; (3) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence; and (4) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Henley v. State*, 493 S.W.3d 77, 93 (Tex. Crim. App. 2016) (citing *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006)). These factors may blend together in practice. *Gigliobianco*, 210 S.W.3d at 642.

15

<u>Inherent Probative Value</u>

As noted above, evidence of the two extraneous offenses was admissible as same-transaction contextual evidence. Such evidence "is almost always admissible," and "[r]arely will the prejudicial value render inadmissible any evidence that is context of the offense." *Mann v. State*, 718 S.W.2d 741, 744 (Tex. Crim. App. 1986); *see Brickley v. State*, 623 S.W.3d 68, 81 (Tex. App.—Austin 2021, pet. ref'd) (noting that evidence of "continuing course of conduct" can increase probative value of extraneous offense). Evidence of the altercations involving Martinez's wife and Boulton allowed the jury to view the charged offense "in the proper setting," *Mann*, 718 S.W.2d at 744; was "necessary to a full picture and understanding of what took place," *id.*; and was relevant to determining Smith's guilt for the charged offense, *Ex parte Lane*, 303 S.W.3d 702, 710 (Tex. Crim. App. 2009).

Evidence of the extraneous altercations was also probative because it was a "necessarily related circumstance" of Smith's attempted flight, which is "a circumstance from which an inference of guilt may be drawn." *See Devoe*, 354 S.W.3d at 470. The evidence was correspondingly less prejudicial because the altercations occurred almost immediately after the charged offense and to each other. *Cf. Perez v. State*, 562 S.W.3d 676, 690 (Tex. App.—Fort Worth 2018, pet. ref'd) (noting that "a substantial gap in time between the occurrence of extraneous offenses . . . and the charged offense" weakens extraneous-offense evidence's probative value).

Moreover, the evidence's probative value was heightened by the extraneous offenses' similarity to the charged offense. *See Love v. State*, 706 S.W.3d 584, 613 (Tex. App.—Austin 2024, pet. ref'd) (recognizing that "the probative value of evidence 'is often . . . a function of the similarity of the extraneous transaction to the charged offense'" (quoting

16

*Montgomery*, 810 S.W.2d at 390)). All three offenses involved carjackings—either attempted or successful—and occurred in close temporal and physical proximity. There was evidence that Smith was intoxicated during all three and that in each, he acted suddenly, surprising the vehicle's occupant. Both Martinez and his wife testified that Smith pulled or attempted to pull them from their vehicles, and Martinez's wife testified that she saw Smith attempt to pull Boulton from his car. And Martinez, his wife, and Boulton all suffered scratches to their heads or faces. "These similarities lend substantial probative value to the extraneous offense evidence." *Corley v. State*, 987 S.W.2d 615, 619 (Tex. App.—Austin 1999, no pet.)

### State's Need for Evidence

The trial court reasonably could have determined that the State needed this evidence because Smith maintained that he did not attack Martinez or steal his truck and challenged the credibility of Martinez's testimony. The evidence of the charged offense was limited to Martinez's statements and testimony and the testimony of Smith's stepfather. *See Robisheaux*, 483 S.W.3d at 220 (determining that State's need for evidence "weighs strongly in favor of admission" because without the evidence, the State's case would have amounted to the complainant's word against the defendant's). Defense counsel argued that Martinez was "essentially the case" and that he was a "drug addict" who had "lied about a lot of things." Counsel likewise argued that Smith's stepfather had been too far from Martinez's truck to offer a credible account of what occurred.

### Tendency to Confuse, Distract, or Be Given Undue Weight

There is no evidence in the record that the jury was confused by the extraneous-offense evidence or conflated the extraneous offenses with the charged offense. Indeed, "[w]hile

all evidence of extraneous crimes is almost always inherently prejudicial and carries the potential to impress the jury of a defendant's conformity, this potential is minimized through a limiting instruction." *Heigelmann v. State*, 362 S.W.3d 763, 772 (Tex. App.—Texarkana 2012, pet. ref'd). In its charge, the trial court's instructions to the jury included:

> During the trial, you heard evidence that the defendant may have committed wrongful acts not charged in the indictment. The state offered the evidence to show the defendant's motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, as those factors relate to the offenses charged in the indictment. You are not to consider evidence of such a wrongful act at all unless you find, beyond a reasonable doubt, that the defendant did, in fact, commit the wrongful act. Those of you who believe the defendant did the wrongful act may consider it.
>
> Even if you do find the defendant committed a wrongful act, you may consider this evidence only for the limited purpose I have described. You may not consider the evidence to prove that the defendant is a bad person and for this reason was likely to commit the charged offense (or any lesser charge you consider). In other words, you should consider this evidence only for the specific, limited purpose I have described. To consider this evidence for any other purpose would be improper.

Smith has not cited, and we have not found, evidence in the record that would support a finding that the jury failed to follow this instruction. *See Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005) (presuming that jury followed trial court's instructions and placing burden on appellant to rebut presumption by pointing to evidence in record). Thus, we presume that the jury followed the trial court's instructions. *See id.*

Additionally, the complained-of evidence was not technical or scientific in nature. *Robisheaux*, 483 S.W.3d at 220–221. Rather, it concerned matters such as victim credibility that are easily comprehensible by laypeople. *See Deggs v. State*, 646 S.W.3d 916, 927 (Tex. App.—Waco 2022, pet. ref'd); *Gaytan v. State*, 331 S.W.3d 218, 228 (Tex. App.—Austin 2011, pet. ref'd). Any tendency of the extraneous-offense evidence to suggest a decision on an improper

18

basis was further mitigated by the fact that the extraneous altercations were less serious than the charged offense—in which Martinez testified that Smith wielded a knife and threatened to shoot him. *See Robisheaux*, 483 S.W.3d at 220.

Time Needed to Develop

Testimony regarding the extraneous offenses amounted to around twelve pages of an approximately 280-page trial transcript. *See Hart v. State*, 688 S.W.3d 883, 893 (Tex. Crim. App. 2024) (stating that time needed to develop evidence "includes any testimony introduced regarding the evidence, including cross-examination, redirect examination, and any rebuttal offered by the defense in response to the evidence"). We cannot conclude that the presentation of the complained-of evidence consumed an inordinate amount of time or impressed the jury in "some irrational, but nevertheless indelible way." *See Colone v. State*, 573 S.W.3d at 266.

Summary

Considering the relevant factors, we conclude that the trial court within its discretion could have determined that the probative value of the evidence was not substantially outweighed by a danger of unfair prejudice. *See* Tex. R. Evid. 403; *Colone*, 573 S.W.3d 249, 266 (Tex. Crim. App. 2019); *Gigliobianco*, 210 S.W.3d at 642.

For these reasons, we conclude that the trial court did not abuse its discretion by overruling Smith's objections and admitting the evidence of Smith's altercation with Martinez's wife and his subsequent altercation with Boulton. *See Page*, 213 S.W.3d at 336. We overrule Smith's second issue.[5]

---

[5] Because we have concluded that the trial court did not abuse its discretion, we need not conduct a harm analysis. *See* Tex. R. App. P. 47.4.

19

## CONCLUSION

Having overruled Smith's issues, we affirm the trial court's judgment of conviction.

_____
Rosa Lopez Theofanis, Justice

Before Justices Triana, Theofanis, and Crump

Affirmed

Filed:   July 30, 2025

Do Not Publish